**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| NORMAN IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| LEXMARK INTERNATIONAL, INC., RICOH | § | 6:12cv520 |
| AMERICAS CORPORATION, BELKIN | § | |
| INTERNATIONAL, INC., BMW OF NORTH | § | SEVERED FROM |
| AMERICA, LLC, DAIMLER NORTH AMERICA | § | |
| CORPORATION, MERCEDES-BENZ USA, LLC, | § | Civil Action No. 6:11-cv-495 |
| D-LINK SYSTEMS, INC., DISH NETWORK | § | |
| CORPORATION, FORD MOTOR COMPANY, | § | |
| GARMIN INTERNATIONAL, INC., GARMIN USA, | § | |
| INC., GENERAL ELECTRIC COMPANY, | § | **Jury Trial Demanded** |
| GENERAL MOTORS COMPANY, JVC AMERICAS | § | |
| CORPORATION, NOVATEL WIRELESS, INC., | § | |
| NOVATEL WIRELESS SOLUTIONS, INC., | § | |
| NOVATEL WIRELESS TECHNOLOGY, INC., | § | |
| TOMTOM, INC., VIEWSONIC CORPORATION, | § | |
| VIZIO, INC., VOLKSWAGEN GROUP OF | § | |
| AMERICA, INC., XEROX CORPORATION, ZTE | § | |
| (USA) INC. AND ZTE SOLUTIONS INC., | § | |
| | § | |
| Defendants. | § | |

## <u>SECOND AMENDED COMPLAINT</u>

Norman IP Holdings, LLC ("Norman"), by and through its attorneys, for its Second

Amended Complaint against Defendants Lexmark International, Inc. ("Lexmark"), Ricoh

Americas Corporation ("Ricoh"), Belkin International, Inc. ("Belkin"), BMW of North America,

LLC ("BMW"), Daimler North America Corporation, Mercedes-Benz USA, LLC (collectively,

"Daimler"), D-Link Systems, Inc. ("D-Link"), DISH Network Corporation ("DISH"), Ford

Motor Company ("Ford"), Garmin International, Inc., and Garmin USA, Inc. (collectively,

"Garmin"), General Electric Company ("GE"), General Motors Company ("GM"), JVC

Americas Corporation ("JVC"), Novatel Wireless, Inc., Novatel Wireless Solutions, Inc., and

Novatel Wireless Technology, Inc. (collectively referred to as "Novatel"), TomTom, Inc.

("TomTom"), ViewSonic Corporation ("ViewSonic"), Vizio, Inc. ("Vizio"), Volkswagen Group

of America, Inc. ("VW"), Xerox Corporation ("Xerox"), ZTE (USA) Inc. and ZTE Solutions

Inc. (collectively referred to as "ZTE Solutions") (all of which are collectively referred to herein

as "Defendants"), hereby alleges as follows:

## I.     NATURE OF THE ACTION

1.      This is a patent infringement action to end Defendants' unauthorized and

infringing manufacture, use, sale, offering for sale, and/or importation of methods and products

incorporating Plaintiff Norman's patented inventions.

2.      Norman is owner of all right, title, and interest in and to:  United States Patent No.

5,530,597 (the "'597 Patent"), issued on June 25, 1996, for "Apparatus and Method for

Disabling Interrupt Masks in Processors or the Like"; United States Patent No. 5,502,689 (the

"'689 Patent"), issued March 26, 1996, for "Clock Generator Capable of Shut-Down Mode and

Clock Generation Method"; United States Patent No. 5,592,555 (the "'555 Patent"), issued

January 7, 1997, for "Wireless Communications Privacy Method and System"; United States

Patent No. 5,608,873 (the "'873 Patent"), issued March 4, 1997, for "Device and Method for

Interprocessor Communication Using Mailboxes Owned by Processor Devices"; and  United

States Patent No. 5,771,394 (the "'394 Patent"), issued June 23, 1998, for "Apparatus Having

Signal Processors for Providing Respective Signals to Master Processor to Notify that Newly

Written Data can be Obtained from One or More Memories" (collectively, the "Patents").  True

and correct copies of the Patents are attached hereto as Exhibits 1–5.

3.      Each of the Defendants manufactures, provides, sells, offers for sale, imports,

and/or distributes infringing products and services; and/or induces others to make and use its products and services in an infringing manner; and/or contributes to the making and use of infringing products and services by others, including their customers, who directly infringe the Patents.

4.      Plaintiff Norman seeks injunctive relief to prevent Defendants from continuing infringement of Plaintiff's valuable patent rights.  Plaintiff Norman further seeks monetary damages and prejudgment interest for Defendants' past infringement of the Patents.

5.      This is an exceptional case, and Norman is entitled to damages, enhanced damages, attorneys' fees, costs, and expenses.

## II.      THE PARTIES

6.      Plaintiff Norman is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 100 E. Ferguson, Suite 816, Tyler, Texas 75702.

7.      Upon information and belief, Defendant Lexmark International, Inc. is a Delaware corporation with its principal place of business located at 740 New Circle Road, Lexington, Kentucky 40550.  Upon information and belief, Lexmark International, Inc. is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201-4234 as its agent for service of process.  Defendant Lexmark International, Inc. has been served with process.

8.      Upon information and belief, Defendant Ricoh Americas Corporation is a Delaware corporation with its principal place of business located at 2045 East Waterfront Drive, Play Vista California 90094.  Upon information and belief, Ricoh Americas Corporation is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul

Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process. Ricoh Americas Corporation has been served with process.

9.     Upon information and belief, Defendant Belkin International, Inc. is a Delaware corporation with its principal place of business located at 2045 East Waterfront Drive, Play Vista California 90094. Upon information and belief, Belkin International, Inc. is authorized to do business in Texas and has appointed National Registered Agents, Inc., 160 Greentree Drive Suite 101, Dover, Delaware 19904 as its agent for service of process.

10.     Upon information and belief, Defendant BMW of North America, LLC is a Delaware corporation with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. Upon information and belief, BMW of North America, LLC is authorized to do business in Texas and has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 as its agent for service of process.

11.     Upon information and belief, Defendant Daimler North America Corporation is a Delaware corporation with its principal place of business located at 36455 Corporate Drive, Farmington Hills, Michigan 48331. Upon information and belief, Daimler North America Corporation is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

12.     Upon information and belief, Defendant Mercedes-Benz USA, LLC is a Delaware corporation with its principal place of business located at One Mercedes Drive, Montvale, New Jersey 07645. Upon information and belief, Mercedes-Benz USA, LLC is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

13.     Upon information and belief, Defendant D-Link Systems, Inc. is a California corporation with its principal place of business located at 17595 Mt. Hermann Street, Fountain Valley, California 92708.  Upon information and belief, D-Link Systems, Inc. is authorized to do business in Texas and has appointed Nancy Lemm, at 17595 Mt. Hermann Street, Fountain Valley, California 92708 as its agent for service of process.

14.     Upon information and belief, Defendant DISH Network Corporation is a Nevada corporation with its principal place of business located at 9601 S. Meridian Blvd., Englewood, Colorado 80112.  Upon information and belief, DISH Network is authorized to do business in Texas and can be served with process by serving its registered agent for service of process in the State of Colorado, R. Stanton Dodge, 9601 S. Meridian Blvd., Englewood, Colorado 81002.

15.     Upon information and belief, Defendant Ford Motor Company is a Delaware corporation with its principal place of business located at One American Road Dearborn, Michigan 48126.  Upon information and belief, Ford Motor Company is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

16.     Upon information and belief, Defendant Garmin International, Inc. is a Kansas corporation with its principal place of business located at 1200 East 151st Street, Olathe, Kansas 66062.  Upon information and belief, Garmin International, Inc. is authorized to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, Texas 77062 as its agent for service of process.

17.     Upon information and belief, Defendant Garmin USA, Inc. is a Kansas corporation with its principal place of business located at 1200 East 151st Street, Olathe, Kansas 66062.  Upon information and belief, Garmin USA, Inc. is authorized to do business in Texas

and has appointed National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, Texas 77062 as its agent for service of process.

18.     Upon information and belief, Defendant General Electric Company is a New York corporation with its principal place of business located at 3135 Easton Turnpike, Fairfield, Connecticut 06432.  Upon information and belief, General Electric Company is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process.

19.     Upon information and belief, Defendant General Motors Company is a Delaware corporation with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265**.**  Upon information and belief, General Motors Company is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

20.     Upon information and belief, Defendant JVC Americas Corporation is a Delaware corporation with its principal place of business located at 700 Valley Road' Wayne, New Jersey 07470.  Upon information and belief, JVC Americas Corporation is authorized to do business in Texas and has appointed Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 as its agent for service of process.

21.     Upon information and belief, Defendant Novatel Wireless, Inc. is a Delaware corporation with its principal place of business located at 9645 Scranton Road, San Diego, California 92121.  Upon information and belief, Novatel Wireless, Inc. is authorized to do business in Texas and has appointed Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 as its agent for service of process.

22. Upon information and belief, Defendant Novatel Wireless Solutions, Inc. is a Delaware corporation with its principal place of business located at 9645 Scranton Road, San Diego, California 92121. Upon information and belief, Novatel Wireless Solutions, Inc. is authorized to do business in Texas and has appointed Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 as its agent for service of process.

23. Upon information and belief, Defendant Novatel Wireless Technology, Inc. is a Delaware corporation with its principal place of business located at 9645 Scranton Road, San Diego, California 92121. Upon information and belief, Novatel Wireless Technology, Inc. is authorized to do business in Texas and has appointed Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 as its agent for service of process.

24. Upon information and belief, Defendant TomTom, Inc. is a California corporation with its principal place of business located at 11 Lafayette Street, Lebanon, New Hampshire 03766. Upon information and belief, TomTom, Inc. is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

25. Upon information and belief, Defendant ViewSonic Corporation is a Delaware corporation with its principal place of business located at 381 Brea Canyon Road, Walnut, California 91789. Upon information and belief, ViewSonic Corporation is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

26.     Upon information and belief, Defendant Vizio, Inc. is a California corporation with its principal place of business located at 39 Tesla, Irvine, California 92618**.**  Upon information and belief, Vizio, Inc. is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

27.     Upon information and belief, Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Upon information and belief, Volkswagen Group of America, Inc. is authorized to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

28.     Upon information and belief, Defendant Xerox Corporation is a New York corporation with its principal place of business located at 45 Glover Avenue, Norwalk, Connecticut 06856.  Upon information and belief, Xerox Corporation is authorized to do business in Texas and has appointed Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701 as its agent for service of process.

29.     Upon information and belief, Defendant ZTE (USA) Inc. is a New Jersey corporation with its principal place of business located at 333 Wood Ave. South, Floor 2, Iselin, New Jersey 08830 and also at 22425 N. Central Expressway, Suite 323, Richardson, Texas 75080.  Upon information and belief, ZTE (USA) Inc. is authorized to do business in Texas and has appointed Li Mo, 4585 Spencer Drive, Plano, Texas 75024 as its agent for service of process.

30.     Upon information and belief, Defendant ZTE Solutions Inc. is a Delaware corporation with its principal place of business located at 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.  Upon information and belief, ZTE Solutions Inc. is authorized to

do business in Texas and has appointed Incorp Services, Inc., 815 Brazos Street, Suite 500, Austin, Texas 78701 as its agent for service of process.

## III.    JURISDICTION AND VENUE

31.    This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§271, 281, 283, 284, and 285.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1338(a).

32.    This Court has personal jurisdiction over each of the Defendants, and venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c), and 1400.

## IV.    PLAINTIFF'S PATENTS

33.    The '597 Patent discloses an interrupt enable circuit to enable and disable the interrupt at any time except under certain conditions, at which time the system can override the interrupt mask.  Electronic devices practicing the inventions claimed in the '597 Patent can exit certain processes or states without using a hardware reset and thus protect against unnecessary information loss.  Further, through the use of the inventions claimed in the '597 Patent, such electronic devices can prevent situations where the processor is locked in a certain state because all interrupts were masked by software when the processor entered such state.

34.    The '689 Patent discloses a clock generator and interrupt bypass circuit for use in reducing the power consumption of the electrical system in which they are implemented.  The clock generator may provide module clock signals for sequencing modules within the same electrical system, and is capable of generating those module clock signals when in an active mode, and of not generating those module clock signals when in a stand-by mode.  The clock generator is further capable of providing a delay of a predetermined length from a request to enter shut-down mode to actual entry into shut-down mode, allowing time to prepare the

electrical system for shut-down mode. The interrupt bypass circuit may provide a means of leaving shut-down mode in the event that the relevant interrupt requests have been masked.

35.     The '555 Patent discloses a system and method for processing and securing communication signals over a wireless communications network. An enciphering algorithm may be programmatically selected and applied to the signals for secure transmission.

36.     The '873 Patent discloses a device and method for providing inter-processor communication in a multi-processor architecture. A post office RAM has a plurality of mailboxes. Each mailbox is write accessible by one port, but is read-accessible by the other ports. Thus, a processor device on a port has write-access to one mailbox, but can read the other mailboxes in the post office. A transmitting processor communicates with a receiving processor, by utilizing the post office. The transmitting processor writes information into its own mailbox, and signals a receiving processor. The receiving processor determines which of the processor devices signaled it, and reads the information in the transmitting processor's mailbox.

37.     The '394 Patent discloses a servo loop control apparatus having a master microprocessor and at least one autonomous streamlined signal processor is disclosed. The architecture provides a general purpose controller for use in systems where intensive servo signal processing is required and is well suited to applications where multiple servo control loops operate simultaneously. The operation of the streamlined signal processors is autonomous from the master processor so that critical functions can be dedicated to the streamlined signal processors. This eliminates complex interrupt management and tedious real time scheduling constraints, simplifies system design and improves system performance. The architecture provides an integrated mechanism for implementing multiple, concurrent, complex signal

processing and embedded control functions, such as complete servo-mechanism management for high performance disk storage systems.

38.     Norman has obtained all substantial right and interest to the Patents, including all rights to recover for all past and future infringements thereof.

## V.     LICENSING RELATED TO THE PATENTS

39.     On February 1, 2010, Saxon Innovations, LLC ("Saxon") assigned to Norman IP Holdings LLC all right, title, and interest in the Patents.

40.     Norman's business includes acquisition and licensing of intellectual property.   In that regard, Norman and its predecessors in interest have licensed the Patents to dozens of Fortune 500 companies, directly and indirectly.   Norman has also entered into numerous settlement agreements in connection with litigation in the Eastern District of Texas and in the International Trade Court.

## VI.     DEFENDANTS' ACTS

**Lexmark**

41.     Lexmark manufactures, provides, sells, offers for sale, and/or distributes infringing systems.   The infringing Lexmark systems include, for example, the Lexmark Pro700 Series, the Lexmark C544dn and similar products.   With knowledge of the Patents, Lexmark provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

42.     Through its actions, Lexmark has infringed the '689 Patent, '597 Patent and '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent and '555 Patent throughout the United States.

43. Norman has been and will continue to suffer damages as a result of Defendant Lexmark's infringing acts unless and until enjoined.

**Ricoh**

44. Ricoh manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing Ricoh systems include, for example, Ricoh Aficio printers, eQuill tablet and related products. With knowledge of the Patents, Ricoh provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

45. Through its actions, Ricoh has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

46. Norman has been and will continue to suffer damages as a result of Defendant Ricoh's infringing acts unless and until enjoined.

**Belkin**

47. Belkin manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing Belkin systems include, for example, 802.11-compliant wireless chipsets, including but not limited to Broadcom and Realtek chipsets (for example Belkin routers (*e.g.*, those found in Travel Router, Play F7D4302) and similar products (such as the F5D7000 Wireless G Desktop Card)) and similar products. With knowledge of the Patents, Belkin

provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

48. Through its actions, Belkin has infringed the '555 Patent and actively induced others to infringe and contributed to the infringement by others of '555 Patent throughout the United States.

49. Norman has been and will continue to suffer damages as a result of Defendant Belkin's infringing acts unless and until enjoined.

**BMW**

50. BMW manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing BMW systems include, for example, BMW's infotainment and navigation systems (for example BMW's infotainment systems containing multimedia chipsets such as Nvidia Tegra 2 processors and other processors related to iDrive and navigation functionality), 802.11-compliant wireless chipsets (including but not limited to those related to BWM's ConnectedDrive), CDMA and GSM/UMTS compliant wireless chipsets (including but not limited to those related to BMWs ConnectedDrive and BMW Assist) and microcontrollers for vehicle operations (including but not limited to engine control units such as the Freescale Qorivva series) and similar products. With knowledge of the Patents, BMW provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

51. Through its actions, BMW has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

52. Norman has been and will continue to suffer damages as a result of Defendant BMW's infringing acts unless and until enjoined.

**Daimler**

53. Daimler manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing Daimler systems include, for example, Daimler's infotainment and navigation systems (including but not limited to multimedia chipsets for infotainment systems such as ARM11 processors related to mbrace2), 3G cellular and 802.11-compliant wireless chipsets (including but not limited to those related to Mercedes-Benz In-Vehicle Hotspot such as the Qualcomm MDM6200) and microcontrollers for vehicle operations (including but not limited to processors such as the Freescale MPC5200-series) and similar products. With knowledge of the Patents, Daimler provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

54. Through its actions, Daimler has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

55. Norman has been and will continue to suffer damages as a result of Defendant Daimler's infringing acts unless and until enjoined.

**D-Link**

56. D-Link manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing D-Link systems include, for example, chipsets associated with Network Attached Storage devices (for example, Marvell PXA chipsets found within DNS-323 NAS),

802.11-compliant wireless chipsets in D-Link routers (for example, Marvell chipset in DWL-G630) and similar products. With knowledge of the Patents, D-Link provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

57.     Through its actions, D-Link has infringed the '689 Patent, '597 Patent and '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent and '555 Patent throughout the United States.

58.     Norman has been and will continue to suffer damages as a result of Defendant D-Link's infringing acts unless and until enjoined.

**DISH**

59.     DISH manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing DISH systems include, for example, the chipsets for DVR systems and XiP systems (for example, Broadcom MIPS), 802.11-compliant chipsets (for example, those found USB WiFi dongles) and similar products. With knowledge of the Patents, DISH provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

60.     Through its actions, DISH has infringed the '689 Patent and '555 Patent, and actively induced others to infringe and contributed to the infringement by others of the '689 Patent and '555 Patent throughout the United States.

61.     Norman has been and will continue to suffer damages as a result of Defendant DISH's infringing acts unless and until enjoined.

**Ford**

62. Ford manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing Ford systems include, for example, infotainment and navigation systems (including, but not limited to, the Ford SYNC with multimedia chipsets such as the Freescale i.MX31 processor related to Ford SYNC), 802.11-compliant wireless chipsets (including, but not limited, to Broadcom 4325 chipset used with Ford SYNC) and microcontrollers for vehicle operations (including, but not limited to, Freescale S12X processor) and similar products. With knowledge of the Patents, Ford provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

63. Through its actions, Ford has infringed the '689 Patent, '873 Patent, '597 Patent and '555 Patent, and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '873 Patent, '597 Patent, and '555 Patent throughout the United States.

64. Norman has been and will continue to suffer damages as a result of Defendant Ford's infringing acts unless and until enjoined.

**Garmin**

65. Garmin manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing Garmin systems include, for example, chipsets related to GPS and display functionality in Garmin's GPS devices (including but not limited to STMicroelectronics Cartesio family), 802.11-compliant wireless chipsets (for example, chipsets within Nuvi 295w and GDL59) and similar products. With knowledge of the Patents, Garmin provides related

services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

66. Through its actions, Garmin has infringed the '689 Patent, '597 Patent, '555 Patent, and '873 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, and '873 Patent throughout the United States.

67. Norman has been and will continue to suffer damages as a result of Defendant Garmin's infringing acts unless and until enjoined.

**GE**

68. GE manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing GE systems include, for example, processors embedded in GE Intelligent Platforms products (including, but not limited to, PowerPC CompactPCI single board computers, PowerPC management processor within NETernity RM921N Ethernet Switch, and OCTEON chipset within Packet Processors), embedded processors within GE Healthcare (including, but not limited to, Freescale processors and Marvell processors within Dash-series), GE General Imaging products (including, but not limited to, cameras containing Zoran MIPS processors), cellular and 802.11-compliant wireless chipsets and similar products.

69. Through its actions, GE has infringed the '689 Patent, '597 Patent, '873 Patent, '394 Patent and '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '873 Patent, '394 Patent and '555 Patent throughout the United States.

70. Norman has been and will continue to suffer damages as a result of Defendant GE's infringing acts unless and until enjoined.

**GM**

71. GM manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing GM systems include, for example, GM infotainment and navigation systems (for example, GM infotainment systems containing multimedia chipsets such as ARM11 processors (*e.g.*, CUE)), cellular, GPS, and 802.11-compliant chipsets associated with telematics functionality (including, but not limited to, Qualcomm 2G and 3G chipsets associated with OnStar) and microcontrollers for vehicle operations (for example, Freescale S12X and MPC5676 processors) and similar products. With knowledge of the Patents, GM provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

72. Through its actions, GM has infringed the '689 Patent, '597 Patent, '873 Patent, '394 Patent and '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '873 Patent, '394 Patent and '555 Patent throughout the United States.

73. Norman has been and will continue to suffer damages as a result of Defendant GE's infringing acts unless and until enjoined.

**JVC**

74. JVC manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing JVC systems include, for example, the multimedia chipsets for televisions and camcorders (for example Mediatek MT53xx chipsets embedded within JVC

BlackCrystal LCD TVs and Ambarella chipsets embedded within JVC camcorders), 802.11-compliant chipsets within camcorders (for example the chipset enabling wireless functionality in the JVC Everio camcorder) and similar products.  With knowledge of the Patents, JVC provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

75.     Through its actions, JVC has infringed the '689 Patent, '597 Patent and '555 Patent, and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent and '555 Patent throughout the United States.

76.     Norman has been and will continue to suffer damages as a result of Defendant JVC's infringing acts unless and until enjoined.

## Novatel

77.     Novatel manufactures, provides, sells, offers for sale, and/or distributes infringing systems.   The infringing Novatel systems include, for example, 2G, 3G, 4G and 802.11-compliant wireless chipsets (for example, Gobi/MDM and MSM7K chipsets) for MiFi Hotspots, broadband embedded modules, machine-to-machine modules and similar products.    With knowledge of the Patents, Novatel provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

78.     Through its actions, Novatel has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

79.     Norman has been and will continue to suffer damages as a result of Defendant Novatel's infringing acts unless and until enjoined.

## TomTom

80.     TomTom manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing TomTom systems include, for example, global positioning devices (including products incorporating Broadcom chipsets) and similar products.  With knowledge of the Patents, TomTom provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

81.     Through its actions, TomTom has infringed the '689 Patent, '873 Patent and '597 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '873 Patent and '597 Patent throughout the United States.

82.     Norman has been and will continue to suffer damages as a result of Defendant TomTom's infringing acts unless and until enjoined.

## ViewSonic

83.     ViewSonic manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing ViewSonic systems include, for example, the multimedia chipsets embedded within tablets and televisions (including, but not limited to, ARM Cortex A8 in the ViewPad 10e and Mstar chipset within the VT2730 LCDTV), cellular and 802.11-compliant wireless chipsets (including, but not limited to, Qualcomm MSM7227 embedded in ViewPad7) and similar products.  With knowledge of the Patents, ViewSonic provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

84.     Through its actions, ViewSonic has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent  and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

85.     Norman has been and will continue to suffer damages as a result of Defendant ViewSonic's infringing acts unless and until enjoined.

**Vizio**

86.     Vizio manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing Vizio systems include, for example, multimedia chipsets contained in televisions, tablets, phones, DVD players and similar products (including MT5351 processor embedded within GV47L LCD TV and Marvell PXA processor embedded in Vtab Android Table), 802.11-compliant wireless chipsets (including Broadcom BCM4300-series in VBR210 BluRay player) and similar products.  With knowledge of the Patents, Vizio provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

87.     Through its actions, Vizio has infringed the '689 Patent, '597 Patent, '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent and '555 Patent throughout the United States.

88.     Norman has been and will continue to suffer damages as a result of Defendant Vizio's infringing acts unless and until enjoined.

## VW

89.     VW manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing VW systems include, for example, VW infotainment and navigation systems (for example, VW infotainment systems containing multimedia chipsets, such as nVidia Tegra 2 in the Audi Multi-Media Extension (MMX) board), cellular and 802.11-compliant wireless chipsets (for example, chipset used in Audi Connect and Qualcomm chipsets with UTMS functionality), microcontrollers for vehicle operations (for example, Infineon XC2200) and similar products.  With knowledge of the Patents, VW provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

90.     Through its actions, VW has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

91.     Norman has been and will continue to suffer damages as a result of Defendant VW's infringing acts unless and until enjoined.

## Xerox

92.     Xerox manufactures, provides, sells, offers for sale, and/or distributes infringing systems.  The infringing Xerox systems include, for example, the print processors contained in certain Xerox devices (for example Quattro chipset), 802.11-compliant chipsets and similar products.  With knowledge of the Patents, Xerox provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

SECOND AMENDED COMPLAINT

93. Through its actions, Xerox has infringed the '689 Patent, '597 Patent and '555 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent and '555 Patent throughout the United States.

94. Norman has been and will continue to suffer damages as a result of Defendant Xerox's infringing acts unless and until enjoined.

**ZTE Solutions**

95. ZTE Solutions manufactures, provides, sells, offers for sale, and/or distributes infringing systems. The infringing ZTE Solutions systems include, for example, 2G, 3G, and 4G CDMS and GSM/UTMS chipsets for cellular phones (for example, Qualcomm MSM7K chipsets) and similar products. With knowledge of the Patents, ZTE provides related services, specifications, and instructions for the installation and infringing operation of such systems to its customers, who directly infringe.

96. Through its actions, ZTE Solutions has infringed the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent and actively induced others to infringe and contributed to the infringement by others of the '689 Patent, '597 Patent, '555 Patent, '873 Patent and '394 Patent throughout the United States.

97. Norman has been and will continue to suffer damages as a result of Defendant ZTE Solutions' infringing acts unless and until enjoined.

## VII. WILLFULNESS

98. Plaintiff Norman alleges upon information and belief that, as of the date of the filing of this Complaint, Defendants Lexmark, Ricoh, Belkin, BMW, D-Link, DISH, Ford, Garmin, JVC, Novatel, TomTom, Vizio, VW and Xerox have knowingly or with reckless disregard willfully infringed the Patents (collectively, the "Willful Infringers"). The Willful

SECOND AMENDED COMPLAINT

Infringers have been provided written notice of infringement of the Patents. The Willful Infringers acted with knowledge of the Patents and despite an objectively high likelihood that their actions constituted infringement of Norman's valid patent rights.

99.     This objectively-defined risk was either known or so obvious that it should have been known to each of the Willful Infringers. Norman seeks enhanced damages pursuant to 35 U.S.C. § 284.

## COUNT ONE
## PATENT INFRINGEMENT—U.S. PATENT NO. 5,530,597

100.     Plaintiff Norman realleges and incorporates herein paragraphs 1-99.

101.     Defendants Lexmark, Ricoh, BMW, Daimler, D-Link, Ford, Garmin, GE, GM, JVC, Novatel, TomTom, Viewsonic, Vizio, VW, Xerox and ZTE have infringed the '597 Patent (collectively, the "'597 Defendants").

102.     The '597 Defendants have indirectly infringed the '597 Patent by inducing the infringement of the '597 Patent and contributing to the infringement of the '597 Patent.

103.     Upon information and belief, the '597 Defendants have jointly infringed the '597 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

104.     The '597 Defendants' aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT TWO
## PATENT INFRINGEMENT—U.S. PATENT NO. 5,502,689

105.    Plaintiff Norman realleges and incorporates herein paragraphs 1-99.

106.    Defendants Lexmark, Ricoh, BMW, Daimler, DISH, D-Link, Ford, Garmin, GE, GM, JVC, Novatel, TomTom, Viewsonic, Vizio, VW, Xerox and ZTE have infringed the '689 Patent (collectively, the "'689 Defendants").

107.    The '689 Defendants have indirectly infringed the '689 Patent by inducing the infringement of the '689 Patent and contributing to the infringement of the '689 Patent.

108.    Upon information and belief, the '689 Defendants have jointly infringed the '689 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

109.    The '689 Defendants' aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.


## COUNT THREE
## PATENT INFRINGEMENT—U.S. PATENT NO. 5,592,555

110.    Plaintiff Norman realleges and incorporates herein paragraphs 1-99.

111.    Defendants Lexmark, Ricoh, Belkin, BMW, D-Link, Daimler, DISH, Ford, Garmin, GE, GM, JVC, Novatel, Vizio, VW, Xerox and ZTE have infringed the '555 Patent (collectively, the "555 Defendants").

112.    The '555 Defendants have indirectly infringed the '555 Patent by inducing the infringement of the '555 Patent and contributing to the infringement of the '555 Patent.

113.    Upon information and belief, the '555 Defendants have jointly infringed the '555 Patent, including by controlling and/or directing others to perform one or more of the claimed

method steps.

114.    The '555 Defendants' aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT FOUR
## PATENT INFRINGEMENT—U.S. PATENT NO. 5,608,873

115.    Plaintiff Norman realleges and incorporates herein paragraphs 1-99.

116.    Defendants Ricoh, BMW, Daimler, Ford, Garmin, GE, GM, Novatel, TomTom, Viewsonic, VW  and ZTE have infringed the '873 Patent (collectively, the "'873 Defendants").

117.    The '873 Defendants have indirectly infringed the '873 Patent by inducing the infringement of the '873 Patent and contributing to the infringement of the '873 Patent.

118.    Upon information and belief, the '873 Defendants have jointly infringed the '873 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

119.    The '873 Defendants' aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## COUNT FIVE
## PATENT INFRINGEMENT—U.S. PATENT NO. 5,771,394

120.    Plaintiff Norman realleges and incorporates herein paragraphs 1-99.

121.    Defendants Ricoh, BMW, Daimler, GE, GM, Novatel, Viewsonic, VW, and ZTE have infringed the '394 Patent (collectively, the "'394 Defendants").

122.    The '394 Defendants have indirectly infringed the '394 Patent by inducing the infringement of the '394 Patent and contributing to the infringement of the '394 Patent.

123. Upon information and belief, the '394 Defendants have jointly infringed the '394 Patent, including by controlling and/or directing others to perform one or more of the claimed method steps.

124. The '394 Defendants' aforementioned acts have caused damage to Norman and will continue to do so unless and until enjoined.

## VII.   JURY DEMAND

31. Plaintiff Norman hereby demands a jury on all issues so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff Norman respectfully requests that the Court:

A.   Enter judgment that each Defendant infringes one or more claims of the Patents literally and/or under the doctrine of equivalents;

B.   Permanently enjoin each Defendant, its agents, servants, and employees, and all those in privity with each Defendant or in active concert and participation with any of the Defendants, from engaging in acts of infringement of the Patents;

C.   Award Plaintiff Norman past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendants of the Patents in accordance with 35 U.S.C. §284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. §284;

D.   Declare this case exceptional pursuant to 35 U.S.C. §285; and

E.   Award Plaintiff Norman its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Respectfully submitted,

Dated: January 27, 2012

By: /s/ Andrew G. DiNovo
    Andrew G. DiNovo
    Texas State Bar No. 00790594
    Adam G. Price
    Texas State Bar No. 24027750
    Chester J. Shiu
    Texas State Bar No. 24071126
    **DiNovo Price Ellwanger & Hardy LLP**
    7000 N. MoPac Expressway, Suite 350
    Austin, Texas 78731
    Telephone: (512) 539-2626
    Telecopier: (512) 539-2627

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by formal service of process on this the 27th day of January, 2012. Parties not of record are being service with process in accordance with Fed. R. Civ. P. 4.

    /s/ Andrew G. DiNovo